Good morning and may it please the court, my name is Sean Connolly and I represent the plaintiff appellate Amy Giertz who is present here at court. Ms. Giertz was seriously injured in 2016 when a car invaded her bicycle's right of way, knocking her to the ground and into a hospital. She sued her own insurer, State Farm, for bad faith denial of benefits under her own policy. The trial court allowed State Farm to avoid trial on its bad faith and instead dismissed those claims with prejudice on a ground contrary to Colorado's substantive law. And when that dismissal occurred, did you object? No, Your Honor. Well, we objected beforehand, but what happened is the jury returned a very truncated claim on day one, and the very next day the court entered judgment. And then post trial, post judgment, was any motion filed to say, hey wait a minute, we've still got bad faith hanging out there? No, that was actually done ahead of time in multiple occasions saying you can't do what you're doing that led to that judgment. And so our appeal today challenges the bifurcation orders, two of them, and then the evidentiary rulings that led to this effect. So beforehand, everybody knew at the time of trial what the judge was going to do, and that's why he did it within a day. It was a perfunctory thing. The jury verdict came back on a really a car versus bicycle or bicycle versus car negligence action. But before that, the trial counsel had very strenuously objected in three different times to saying you can't do this. You cannot rewrite substantive law of Colorado. But I thought we had subsequent agreement by counsel for plaintiff here to the bifurcation twice. We have two different orders. First we bifurcate it, then we bifurcate it yet even again. And it seemed in my reading of the record that there was no objection to that. In fact, the counsel said, hey, good idea. It looks good. Let me go through the procedural context, if I can, Your Honor. And it's really the three orders that are challenged are Addendums 1, 2, and 3 in our opening brief. So first of all, there's a motion for bifurcation. Addendum 1 is the order granting bifurcation. On appendix page 130, I think it's page 3 of that order, the judge says plaintiff objects to bifurcation. And plaintiff objects saying that you can't treat the bad faith case this way, that what you're doing, they have no right to present this evidence or to exclude our evidence of bad faith. So objection 1 to order 1. Order 2, a sua spot de order, no objection. But after that, after that, after that, didn't counsel say, in open court, on the record, you know, it's OK to bifurcate. I'm with you here. Yes, let me get this. So that's order 3 that we're challenging. And order 3 was after bifurcation is done, over objection. So their argument is not that we didn't preserve objection. Their argument effectively is that we waived an objection. We waived our prior objection. That comes in order 3. Order 3 is a motion to exclude evidence of State Farm's admissions of fault. And in that opposition, and there are two oppositions, really, there's one on page 239 of the appendix, and there's one on page 299 of the appendix. And in that objection, the objection to the motion to eliminate, to exclude evidence, counsel does say, does clearly say you cannot use bifurcation to prejudice my substantive claim of bad faith. Can't do that. Counsel does, in what they're saying is a waiver, say bifurcation may be efficient. It may have been a good thing. It may be efficient. So I think if there's any argument about waiver, the waiver could be that we waived objections on efficiency grounds and separability grounds. Okay? There could be an argument over that. Well, I thought the word appropriate was also included there. It did. Okay. So would you concede that the plaintiff did waive an objection to the appropriateness of bifurcation in itself? I'm reluctant to concede waiver. I think it requires more than that. I think what counsel did, maybe inartfully, was say we object to any further abuse of bifurcation. We object to the substantive misuse. So I would say. Yeah, and that's helpful because that's how I understood your argument, both there and now, that you weren't saying that the judge screwed up in bifurcating it. She screwed up, according to you. He, this time, but yeah. He. I'm sorry. Yes, he. That the judge then erroneously acted subsequently, but that you had given up the objection to the bifurcation in itself. I mean, by saying it's appropriate. I wish I was more of a word user. Right. But I think in context, I think in fairness, what counsel is trying to do is say we're not trying to re-argue what you've done already. All right? We're saying don't make it worse. And what you can never do, and we've consistently objected to in Order Addendum 1, Order Addendum 2, and now Order Addendum 3, which is a part of our appeal, you cannot use bifurcation to substantively change the claims. All right? You cannot make this a claim. This is a claim fundamentally for breach of contract and bad faith by a policyholder against their own insurer. And you cannot make this into a claim that pretends this trial is as if Ms. Gertz, the bicyclist, had sued the car's driver. And you cannot make it into a – as if State Farm's not a party. And therefore, when he says – and we're entitled to present the evidence of what State Farm did and said in denying the claim. And you cannot make it so sterile and artificial to make it as if this were a claim where she sued the car's driver, who, by the way, unbeknownst to the jury, had already admitted fault. The insurer had admitted fault and had paid 100 percent of their policy limits. So you cannot re-write the case and recast the case into what it is now. And you cannot use the procedural mechanism of bifurcation or, in this context, an evidentiary ruling to change the substance of the case. So those are the objections that we'll preserve. So I would argue, Judge Baccarat, that if you want to say waiver, you can argue the prior objections which were made that said it's not efficient, it's not fair, the issues are inseparable, you can argue that those were waived. I think what was consistently said in objecting to the original bifurcation and then objecting to the evidentiary argument based on that bifurcation is that bifurcation and evidence cannot be changed to change the substantive result of a claim. And that argument is – which is our fundamental argument, both for bifurcation and evidence, because they're all interrelated. And since you always memorize the record, what page is that argument made on? The page of which? The final kicker where you say it's preserved. Yeah, twice. In an objection to the motion to eliminate, page 239 and 240 of the appendix. I think that's volume one. And then a later supplement to that opposition on page 299 and 300 of the appendix, which I believe is appendix volume two. That is where the argument is made fundamentally, which is really our fundamental point here. By the way, we point out that every other judge in the District of Colorado, including an opinion by the Chief Judge Brimmer, says you don't bifurcate these cases. It's not done, they're not separate. But isn't that a discretion call? I mean, every judge handles their cases differently. I don't know what pressures are on the docket for this particular court. True, Judge Briscoe, but I think that this court in Angela, I think it was Judge Anderson's opinion in 1993, still the leading bifurcation case federally, says bifurcation turns on experience. It's an experiential thing. And I'm just pointing out the uniform experience of the District of Colorado in these cases, which are pretty common, as I guess we just saw from the case three today, that this is not an uncommon series of cases in Colorado or probably anywhere in this circuit. The uniform practice is not doing it. But I would say that even for efficiency grounds and separability grounds, what Angela makes clear, and this is not a bad discretion, says it is an abuse of discretion. Flat out, Judge Anderson wrote for the panel there. It is an abuse of discretion if it prejudices the claim. All right? Now, bifurcation and the evidentiary ruling prejudiced her ability to bring a bad faith claim that under Colorado substantive law, and it's really undisputed, although we cited an opening brief and a reply brief. Never mentioned in their answer brief, under the Schultz versus Geico case, under Rayer, under Pfeiffer, an insurer cannot defend a bad faith claim on a ground contrary to or not relied on in real time when it denied the benefits. Isn't the prejudice, however, the fact that the plaintiff had pleaded a contract claim? Because for liability, either for a contract or for bad faith, for UM coverage, there has to be legal liability of Miss Gordon. Correct? And the only thing that was determined at the first trial was the legal liability of Miss Gordon. And so now, and your point was strategically, then you're looking after the fact. Well, you do have to look at the evidence that is determined after the fact to determine legal liability, but that's by virtue of the fact that you had incorporated a breach of contract claim. Right? Well, a couple of responses. An insurer, and this is what Schultz and Colorado substantive law makes clear, that an insurer can waive a defense to benefits. All right? So an element of a breach of contract claim or a bad faith claim is that the uninsured motorist was legally liable to the plaintiff. Now, if an insurer in real time does not rely on that ground and never contests the fact that there is liability, as indeed the driver's insurer admitted that it's insured was liable to my client. The insurer can waive that defense. Is there a legal obligation to waive that? Legal obligation? No, it's just. I mean, they can, but. And they did here. And the evidence, the undisputed evidence says they did. The undisputed evidence is that in real time, in the year plus that this insurer, State Farm, was refusing to pay a UM claim, they had never alleged that she was disqualified from UM coverage because she bore equal or greater fault.  To the contrary. They documented originally when they consented to the other insurer paying full policy benefits, documented that the driver, not the bicyclist, the driver was 100% at fault. Then my client brings, files a UM claim. They document, they conveniently shift position. They say, well, no longer 100%, but the driver has 80% liability, 80% fault. So still you're entitled to it. Then, indeed, third and the final kind of straw on this, the last straw, I guess, in terms of their reliance on this, is even after this UM suit was filed, they never claimed that she was not entitled to coverage because of fault. They admitted that she was entitled to coverage, and they made a payment of $2,500. So they waived the right to say that the driver was less at fault than the bicyclist. So, and that's clear that they can waive that. And factually, the evidence is clear that they did waive it here. So having done that, the prejudice from bifurcation is the jury heard none of this. This was a sterile case as if she had sued the driver in a tort action. That's all the jury knew. Never heard all the conduct. So the prejudice in the severance and the prejudice that helped them in the entry ruling that we objected to, no dispute that we objected to that evidence, that State Farm's admissions can't come in. Judge, they're not admissions because State Farm witnesses had no personal knowledge. And personal knowledge requirement, Grace United case of this court and other cases, doesn't apply to a party admission. So your argument, as I understand it, is not the misuse of what the adjudication at the trial one is. It's just the fact that trial one was conducted without regard to the fact that the insurer had waived the legal liability of Gordon. And ultimately, by winning on a defense that they convinced the jury on that was 50-50 fault, they won and defeated a bad faith claim on a ground that Colorado law does not allow. But if we hypothetically reject your argument that there was waiver as a matter of law, then there would be no argument any longer that there was a misuse of the adjudication at the first stage of the trial. Well, there still would be, I think, Your Honor, because we have an evidentiary point that the judge precluded admissions of State Farm that, by words and conduct, that the driver was more at fault than the bicyclist, my client. So there would still be the evidentiary error. Why would that matter if there was no legal liability of Gordon, which was the result of the trial? Because the jury found 50-50 fault, and if they had known that this was against State Farm, and State Farm admitted that there was 100% or 80%... But isn't the court correct on that ruling? That is that what the folks in the claims adjudication office were thinking about what happened at this accident is irrelevant. They weren't on the scene, they're not experts, they're just trying to do their job in a little office somewhere. Well, that undercuts the whole notion of federal evidentiary law in terms of party admissions. Party admissions are relevant, despite parties not having personal knowledge, despite them not having expertise. And they're relevant because they show a party's real-time evaluation. If I could say one... Well, anyway, I'm out of time, I guess, so if I could have the court's grace to make up a minute, Esther, but if not, I... You have one minute for rebuttal. Thank you. Good morning, and may it please the court. My name is Brendan Powers, I represent State Farm Mutual Auto Insurance Company, the appellee in this case. This case presents an interesting conundrum in that the appellant is asking this panel to override the clear discretion of the court, where the court identified a single question of fact that is a threshold issue on which the plaintiff has the burden of proof for each of the plaintiff's claims. But is it a threshold issue on the bad faith question? It is absolutely a bad faith, or excuse me, absolutely a threshold issue, Judge Briscoe. If we look at... So if you have no ability to recover under your policy, then you can't talk about bad faith? That is absolutely true in Colorado. The substantive law in Colorado is undisputed that if you cannot establish your breach of contract claim, your entitlement to benefits, then you are not entitled to pursue bad faith claims. And when we speak in terms of bad faith claims, I want you to... And the best case for that is which case? That would be, Your Honor, there's a number of cases. I would point to Jarnagin v. Bankers Life, 824 P. 2nd... Jarnagin? I think it's Jarnagin, J-A-R-N. Got it. And also Tynan's Nissan v. American Hardware. Got it. That is 917 P. 2nd, 321. Yeah, those are in your brief. Thank you. Thank you, Your Honor. And also Hayden, H-Y-D-E-N v. Farmers Insurance, 20 P. 3rd, 1222. Also, if we look at the statute in Colorado that speaks in terms of punishing insurance companies that delay or deny a benefit without a reasonable basis, that statute speaks specifically to a covered benefit. And I think that's essential here. And that, when counsel at trial in their motions in responding to my motion in limine, when they speak in terms of the appropriateness of bifurcation in this particular case, they recognize the economy of it. This trial went from a 10-day trial to a three-and-a-half-day trial. And it's because UIM, in this particular case, presented a unique set of circumstances, where there is a single question of fact that is a threshold that the plaintiff must cross before the plaintiff can seek contract benefits, and certainly before the plaintiff can seek bad faith benefits. And here I think it's important to emphasize the holding in Sunnahara v. State Farm, 280 P. 3rd, 649. That case speaks specifically to all the issues that we're dealing with here. As I follow the oral argument of my colleague, I think it's acknowledged now that economy and the appropriateness of bifurcation under Rule 42B is not really their concern. Their real concern is the question of the separability of these claims. The Sunnahara case speaks in terms of that evidence about what the insurance claim representative's internal thinking is, is relevant to setting reserves, which are required by Colorado law, and is relevant to establishing settlement processes. Colorado law requires the insurance company to maintain these types of notes. They're like free-thinking nudes. As I was preparing for the argument, I was thinking in terms of, if one were to look at my notes before an examination, that would look very much different than the notes of my examination answer. When they speak in terms of these admissions, they skip over a critical element, and that is, these are not admissions. These are the thought process of the insurance company at the time. It's like a snapshot in time. Waiver was never argued at the district court level. It simply was not. And here's where I think it's critical to recognize... Waiver by State Farm. Yes, correct, Your Honor. When we speak in terms of the idea that the internal claim notes of the insurance company might have some relevance, Colorado law makes clear that that relevance pertains only to the questions of bad faith. And I'll quote from the Sunnahara case. Sunnahara was specific to UIM actions, and there the Supreme Court of Colorado found that the internal notes and the internal thought process of the insurance company in addressing reserves and possible settlement strategy are not relevant to the question of liability. But they're certainly not hearsay, right? They are admissions for purposes of hearsay. No, I disagree with that, Your Honor. They are certainly hearsay. They are not... The claim representative has no personal knowledge of the accident. That's a Rule 602 objection, not a Rule 801 objection. Correct, but, Your Honor, and I would point to... Maybe I don't know... Maybe if I'm a defendant representative, maybe I don't know what I'm talking about. But if I say, well, Miss Gordon, you know, was either 80% at fault or 100% at fault or not at fault, I don't know why that wouldn't be attributable to me as an admission for purposes of hearsay, even if I had no personal knowledge. And Sunnahara speaks directly to that, Your Honor. And that is the idea that evidence of liability assessments and fault assessments within the claim file are relevant in terms of measuring whether the insurance company, at the time it makes a decision, has a reasonable basis for that decision. But it clearly states, that case clearly states that that thought process and that type of note-taking is not a judicial admission. It says it three times in that opinion, that the note-taking is not a judicial admission because those notes exist not for purposes of assessing liability or determining liability. Yeah, I wasn't suggesting it was a judicial admission. I was suggesting that it was a party admission, under Rule 802. And that's what Sunnahara says. It is not a party admission. All right. Because those notes don't exist for that purpose. Okay. And not only is it not reasonably calculated to lead to discovery of miscellaneous evidence in UIM actions, Sunnahara emphasizes that notion that when we look at a bad faith claim, we look at the conduct of the insurance company. In the UIM context, there is that threshold question of the liability of the plaintiff and the tortfeasor. And there we focus on the conduct of the involved parties. And that's exactly what Judge Domenico did in this particular case. He said, I have a docket that is being overrun by COVID delays. I have the ability to take a 10-day trial and reduce it to a 3-day trial by identifying the threshold issue on which this jury must first decide liability of the uninsured motorist before we get to damages and before we get to whether there is a question of mishandling or bad faith handling by the insurance company. I think it's interesting to emphasize in the Angelo v. Armstrong case, 11F3rd 957, and particularly at 965, because there, in the Angelo case, that was an asbestos exposure case. And what the court identified was, rather than have an extended trial, let's address the threshold question of whether there is sufficient medical causation evidence that exposure to the asbestos caused the injuries and death that were in question. And the plaintiff, in that case, made the exact same argument that's being made here, was that the court's use of Rule 42 to identify limited issues, threshold issues, that would eliminate the need for the rest of the trial. The plaintiff had argued that narrowing the issue that way, even though it was consistent with the substantive case law, narrowing the issue in that way precluded them and prejudiced their ability to develop more fully certain arguments. In our appeal, the court rejected that. One, it was not a showing of an abuse of discretion by the court. Rather, it was an illustration that if you can't appropriately identify a threshold issue that will eliminate the need for the rest of the trial, that is appropriate. And this concept that there's other theories that you might want to develop is not relevant to the inquiry in terms of a reviewing court looking at whether the underlying court abuses discretion. I want to take a moment or two to address this fallacy that the jury does not know who the case is against. State Farm is in the caption. State Farm, using all of the jury instructions, State Farm is used specifically. State Farm had a representative at counsel table. Counsel for the plaintiff in opening statement, appendix volume 2, 381, repeatedly refers to State Farm. I thought it was also interesting that the jury was explaining the case pursuant to a statement of the case that was presented by the parties and was a stipulated statement of the case. I would point to volume 1, page 269 in the record. So what Judge Domenico is doing in terms of explaining the case to the jury, he's literally taking the very stipulated statement of the case that was presented. What does that stipulation say? This is just a negligence matter? It describes appropriately that this jury's charge, it is a lawsuit against State Farm, that the jury's charge is to determine faults in this case and that State Farm has the burden of proving the comparative fault defense. It is, I think, to be emphasized that there is no question that the jury was properly instructed under Colorado law for the issue that the court determined, the threshold issue that the court identified as, you know, first we have to resolve this, plaintiff. First we have to establish the fault of an underinsured motorist and then we get to the questions of damages, bad faith, those types of issues. And it talked about going on to issues of contract and bad faith in the stipulated statement? It does not say that in the stipulated statement, nor did plaintiff ask it to say so. Nor did plaintiff ever say, Judge, I think it's important in our statement of the case to emphasize that this is a breach of contract claim against State Farm. That is said, I mean, the jury does know that the contractual relationship is between plaintiff and plaintiff. But they don't know about the bad faith claim. They don't know about the bad faith claim. And Sunnahara suggests that they shouldn't know about the bad faith claim. You know, one of the elements of whether bifurcation is appropriate is prejudice to a party. There is an argument that it is prejudicial to an insurance company to allow all that bad faith evidence in front of a jury because it's distracting under 401. It confuses them as to what the substance is. But that's the plaintiff's case, those two claims. It's not the plaintiff's case, though, Your Honor. The plaintiff's case is three claims, beginning with breach of contract. And each of those claims require that before there is any duty owed by the insurance company, the plaintiff must establish that the underinsured motorist bears more than 50% of the fault. And the jury was explained that the instruction says to the jury, if you find the plaintiff 50% or more at fault, she will receive nothing. So the jury knows the stakes. She will receive nothing from this defendant. And the defendant was the driver, not State Farm. It does not say this defendant, Your Honor. It says the plaintiff will recover nothing, which is consistent with all of the case law in Colorado on how the comparative fault instruction is supposed to be phrased. And again, that instruction stipulates this rule. Yeah, but that's usually just, you know, that's usually plaintiff versus defendant. We're not talking about a third party, which in this case is the insurance company. I mean, I get what you're saying. On its face, that sounds right. My time is almost up. I will leave you with that notion of, again, Sunihara, though, recognizes that UIM is a really unique set of circumstances wherein the insurer steps into the shoes of the tortfeasor and essentially assumes the defenses of the tortfeasor. And so it's the uniqueness of this case that I would encourage this panel to respect the discretion of the district court and affirm the district court's ruling. Thank you. Thank you. Mr. Connolly, I think you need to address the issue of whether or not you raised this waiver by State Farm in the district court. Yes, Judge Bernfeldt. I appreciate it. That was going to be my first point. And Judge Briscoe asked about what's your best case. He cited Jarnigan and Tynan's Nissan. We cite those that are distinguished on page four of our reply brief. Those are cases where there was no coverage. No coverage. There's coverage here. Plankton undeniably had UIM coverage. The question is whether she had benefit entitlement. And in terms of benefit entitlement, under the cases we rely on that they ignore, Schultz, Pfeiffer, Rager, that those may be waived. And that's what they said, and that's what we argued. We said you cannot ensure for defending a bad faith claim, say, deny on one ground and then justify that denial on a different ground. That's exactly what happened here. So there was waiver. We argued those cases repeatedly. And then ultimately the prejudice in this case is that under Colorado law, they cannot win a bad faith claim on a ground they did not contemporaneously assert. They avoided bad faith claims and ultimately won those claims on a ground that and we objected to that. So we ask you to reverse and give us a trial on the bad faith claims. And I thank you for the extra minute, and thank you, Your Honors. Thank you, Counsel. This banner will be submitted.